UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                 **MEMORANDUM OF LAW & ORDER**
                                  Criminal File No. 04-457 (MJD/JGL)

(1) DEMPSEY ANTONIO BROWN and
(2) BRANDON GULLEDGE a/k/a
MARCUS DWAYNE EDWARDS,

       Defendants.
_____

Elizabeth C. Peterson, Assistant United States Attorney, Counsel for Plaintiff.

Joseph Kaminsky, Kaminsky Law Office, Counsel for Defendant Dempsey Antonio Brown.

Gary R. Bryant-Wolf, Bryant-Wolf Law Office, Counsel for Defendant Brandon Gulledge.
_____

## I.    INTRODUCTION

The above-entitled matter comes before the Court upon the Report and Recommendation of Chief United States Magistrate Judge Jonathan Lebedoff dated April 25, 2005. Both Defendants have filed objections to the Report and Recommendation. Also before the Court is Defendant Brandon Gulledge's Pro Se Motion to Sever.

1

Pursuant to statute, the Court has conducted a de novo review of the record.  28 U.S.C. § 636(b)(1); Local Rule 72.1(c).  Based on that review the Court adopts in part and modifies in part the Report and Recommendation dated April 25, 2005.  For the reasons explained in the Report and Recommendation for denying Defendant Brown's motion to sever, the Court also denies Defendant Gulledge's Pro Se Motion to Sever [Docket No. 53].

## II.     FACTUAL BACKGROUND

The Court adopts the facts as set forth in Part I of the Report and Recommendation.

## III.    DISCUSSION

### A.     Validity of Initial Stop and Detention

The Court adopts Parts II(A) and II(B) of the Report and Recommendation.

### B.     Searches of Defendants and of the Tahoe

In Part II(C) of the Report and Recommendation, the Chief Magistrate Judge recommends that Defendants' motions to suppress the evidence found in the Tahoe as a result of the searches of Defendants and of the Tahoe be denied on the grounds that the officers' searches were permissible under the protective search doctrine.  For the reasons that follow, the Court finds that the officers did not have a reasonable fear for their safety justifying the protective searches.

### C.  Validity of the Terry Search of Gulledge

Under Terry v. Ohio,

> where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

392 U.S. 1, 30 (1968).

The Court uses an objective test to determine the legality of a protective search.  "[T]he validity of a Terry search does not depend upon the searching officer actually fearing the suspect is dangerous; rather, such a search is valid if a hypothetical officer in the same circumstances could reasonably believe the suspect is dangerous."  United States v. Rowland, 341 F.3d 774, 783 (8th Cir. 2003) (citations omitted).

In this case, the officers clearly acted in a manner demonstrating that they were not concerned for their safety.  They both leaned into the Tahoe's windows to talk to the suspects without drawing their weapons.  James Burns testified that it would have been "insane" to allow Brandon Gulledge to stand next to the Tahoe if Burns believed that Gulledge had a gun in the Tahoe.  Tr. 93:2-4.  However, the

3

videotape demonstrates that the officers left Dempsey Brown alone and unwatched in the Tahoe for a little over one and one-half minutes when they allegedly believed that there was a gun in the center console.  The Court notes that these actions demonstrating the officers' subjective lack of fear are insufficient to justify a finding that the officer safety search was unreasonable; instead, the Court must determine whether a hypothetical officer could reasonably believe that Defendants were dangerous.

The Government cites the following factors as the basis for the officers' articulable suspicion that Defendants were armed and dangerous: 1. Gulledge made a quick lean toward the center of the Tahoe seconds after the officers activated their squad lights; 2. Gulledge had nothing in his hand when Burns approached, suggesting he may have just tried to conceal something in the center console; 3. Burns observed Gulledge's obvious nervousness and shaking hands; and 4. Gulledge gave evasive answers to questions about his name.

As noted in the Report and Recommendation, there are many innocent explanations for leaning toward the center of the Tahoe, such as to adjust the radio.  Tr. at 39:4-15.  The officers could not see Gulledge's hands and could only speculate that he was placing something in the Tahoe's center console.  Id. at 39:16-40:5.

Even if Gulledge did appear nervous, "[i]t certainly cannot be deemed

unusual for a motorist to exhibit signs of nervousness when confronted by a law enforcement officer." United States v. Beck, 140 F.3d 1129, 1139 (8th Cir. 1998). Nervousness is of particularly limited significance when the officer had never previously encountered the defendant and "therefore had no measure by which to gauge [the defendant's] behavior during the traffic stop with his usual demeanor." Id. Thus, the Court affords little weight to the allegation that Gulledge appeared nervous when questioned by a police officer whom he had never encountered before.

The most significant factor proffered by the Government is that Gulledge gave unusual and somewhat evasive answers when asked about his identity. Tr. at 69:5-70:5. In combination with other factors, a suspect's "evasive answers" to an officer's questions can be a factor in favor of finding reasonable suspicion. See, e.g., United States v. Atlas, 94 F.3d 447, 451 (8th Cir. 1996) (holding that the suspect's "evasive answers," combined with his presence in a high-crime area, his nervousness and surprise, throwing a heavy nylon bag, similar to another bag containing a gun recently recovered by the officer, onto the ground upon seeing the officer, and shifting his gaze between the officer and the bag supported reasonable suspicion that there was an illegal weapon in the bag). However, the facts in this case come nowhere near the type of circumstances noted in Atlas. While Gulledge's responses to Burns's questions could have indicated that he was

lying to Burns, they also could have simply indicated that Gulledge was nervous when being unexpectedly questioned by a police officer or that Gulledge generally responds to questioning in that manner.  Additionally, as noted above, Burns had never before encountered Gulledge and had no previous experience with which to compare Gulledge's behavior during this encounter.  During his interaction with Burns, Gulledge was compliant and made no furtive or sudden movements.  The officers saw no evidence of a suspicious object, such as a possible weapon.

Two police officers stopped a vehicle for a minor traffic violation; it was a sunny day on a well-traveled road; the officers saw no evidence of suspicious objects in the vehicle; and both suspects were compliant and made no furtive movements during their encounter with the officers.  An ambiguous "lean" combined with Gulledge's nervous appearance and speech during his encounter with Burns is simply not enough for a reasonable police officer to fear for his safety.  The Court finds that the officers lacked reasonable suspicion to conduct a Terry frisk of Gulledge.

### D.   Validity of the Protective Search of the Tahoe

"[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably

warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.'" <u>United States v. Rowland</u>, 341 F.3d 774, 783 (8th Cir. 2003) (quotation omitted).  The police may conduct a protective <u>Terry</u> search of the interior of a vehicle even after they have removed the un-arrested occupants of that vehicle.  <u>Id.</u>

The Government asserts that Gulledge's lean, nervousness, unusual answers, his tense and flexed muscles during the pat-down search, and Brown's turn toward the Tahoe as the officers led him to the squad car, provided reasonable suspicion that Defendants were dangerous and could gain immediate control of weapons.  As determined above, the "lean" and Gulledge's nervousness and unusual answers were insufficient to support a reasonable suspicion that Defendants were dangerous.

Gulledge's tenseness during a pat-down search by two police officers does not support such a reasonable suspicion, as tenseness is a normal reaction to being put against a police car and frisked by officers while standing on the street. Gulledge also testified that he became tense when one of the officers grabbed his "privates," which also is a typical reaction.  Tr. at 128:1-16.

Brown testified that he momentarily turned back toward the Tahoe to retrieve his identification and insurance information, which he had forgotten in the vehicle.  Tr. at 116:2-10.   Given that Michael Geere told Brown that the stop

was related to Brown's alleged lack of insurance, it was reasonable for Brown to turn back to retrieve his insurance information.  Additionally, Brown immediately complied when Geere directed him to continue toward the squad car.  In the minute and a half preceding the turn, Brown had compliantly sat alone in the Tahoe, unwatched by the officers.  He then stepped out of the Tahoe immediately when directed.  His compliant actions lessen the relevance of his brief half-turn toward the Tahoe as Geere led him to the squad car.

The Court concludes that, taken in totality, Gulledge's lean, his nervousness and unusual answers, his tenseness during the Terry search, and Brown's half-turn do not provide a reasonable suspicion of danger sufficient to support the officers' search of the Tahoe.  Thus, the officers' search of Brown and of the Tahoe were violations of Brown's Fourth Amendment rights.  Brown's motion to suppress the evidence found in the Tahoe is granted.

### E.     Gulledge's Standing

As a mere passenger in the Tahoe, Gulledge does not have standing to object to the search of the Tahoe.  United States v. Green, 275 F.3d 694, 699 (8th Cir. 2001) (noting that a passenger "has no reasonable expectation of privacy in an automobile belonging to another") (citing Rakas v. Illinois, 439 U.S. 128, 148-49 (1978)).  However, Gulledge does have standing to object to his own unlawful search and detention:

> Even though [the defendant] lacked a possessory or property interest in the motor vehicle that would enable him to directly challenge the search, he may still contest the lawfulness of his own detention and seek to suppress evidence as the fruit of his illegal detention. A passenger has standing to challenge his detention because all occupants of a stopped vehicle are subject to a Fourth Amendment seizure.

Id. at 699 (citations omitted).

The Court has already determined that the officers' Terry frisk of Gulledge was unlawful. The officers were prompted to search the Tahoe by Gulledge's tenseness during the illegal Terry frisk of his person. See, e.g., Tr. at 12:19-23. The Court concludes that the illegal Tahoe search was fruit of the officers' illegal search of Gulledge. See, e.g., United States v. Pulliam, 405 F.3d 782, 787 (9th Cir. 2005) (noting that a passenger can "show that evidence found in a car is the fruit of his own unlawful detention" by showing "that statements he made or evidence found on his person during his detention prompted the officers to search the car"). Thus, the Court grants Gulledge's motion to suppress the evidence found during the search of the Tahoe.

### F.  Suppression of Defendants' Statements

The Court must next determine whether the recording of Defendants' conversation in the back of the squad car was fruit of the illegal searches. A defendant "does not have a reasonable or legitimate expectation of privacy in statements made to a companion while seated in a police car." United States v.

9

Clark, 22 F.3d 799, 802 (8th Cir. 1994).  Additionally, a conversation between two suspects is not an interrogation implicating Miranda.  United States v. Ingle, 157 F.3d 1147, 1151 (8th Cir. 1998); see also United States v. Burns, No. CR. 01-121, 2002 WL 1461749, at *1 (D. Minn. July 3, 2002) (unpublished) (addressing recorded conversation between two suspects in the back of a squad car).  Thus, unless the Court finds that the recording is fruit of the poisonous tree, it is admissible.

"Statements that result from an illegal detention are not admissible." United States v. Hernandez-Hernandez, 384 F.3d 562, 565 (8th Cir. 2004).  "[T]he Fourth Amendment may protect against the overhearing of verbal statements as well as against the more traditional seizure of 'papers and effects.'"  Wong Sun v. United States, 371 U.S. 471, 485 (1963).  The Court must determine whether the evidence sought to be suppressed was "come at by the exploitation of that [initial] illegality."  Id. at 488 (citation omitted).

Under Eighth Circuit precedent, as part of a routine traffic stop, a police officer may place the driver in the patrol car.  United States v. Ramos, 42 F.3d 1160, 1163 (8th Cir. 1994) (citing United States v. Richards, 967 F.2d 1189, 1192-93) (8th Cir. 1992).  Thus, independent of the officers' illegal Terry frisks and search of the Tahoe, they could legally place Defendants in the back of the squad car as a routine part of the initial, valid traffic stop.  The police did not  place

10

Defendants in the squad car in exploitation of the illegal pat-down searches or Tahoe search. Thus, Defendants' motions to suppress the statements made in the back of the squad car are denied.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  The Chief Magistrate Judge's Report and Recommendation dated April 25, 2005, [Docket Nos. 50 & 51] is hereby **ADOPTED IN PART** and **MODIFIED IN PART** as follows:

    a.  The Court **ADOPTS** Parts I, II(A), II(B), and III of the Report and Recommendation.

    b.  The Court **MODIFIES** Parts II(C) and II(D) as set forth above in this Memorandum of Law & Order.

2.  Defendant Brown's Motion to Suppress Statements, Admissions and Answers [Docket No. 35] is **DENIED**.

3.  Defendant Gulledge's Motion to Suppress Statements, Admissions and Answers [Docket No. 27] is **DENIED**.

4.  Defendant Brown's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 40] is **GRANTED**.

5.  Defendant Gulledge's Motion to Suppress Evidence Seized [Docket No. 29] is **GRANTED**.

6.  Defendant Brown's Motion for Severance [Docket No. 33] is **DENIED**.

7. Defendant Brandon Gulledge's Pro Se Motion to Sever [Docket No. 53] is **DENIED**.

Dated: June 17, 2005                               s/ Michael J. Davis
                                                   Judge Michael J. Davis
                                                   United States District Court